821 So.2d 1174 (2002)
Mario PIERRE, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D99-2704.
District Court of Appeal of Florida, Third District.
July 24, 2002.
Bennett H. Brummer, Public Defender, and Marti Rothenberg, Assistant Public Defender, for appellant.
*1175 Robert A. Butterworth, Attorney General, and Consuelo Maingot, Assistant Attorney General, and Laurel R. Wiley, Certified Legal Intern, for appellee.
Before JORGENSON, COPE and RAMIREZ, JJ.
COPE, J.
Mario Pierre appeals his convictions and sentences for burglary of an occupied conveyance (a vessel), aggravated battery with a firearm, and kidnapping with a firearm. We affirm.
The charged offenses were committed during a ship-invasion robbery committed on the vessel Miss Shandeline, which was in Miami after arriving from Haiti. Defendant-appellant Pierre does not challenge the convictions but raises two sentencing issues.
First, the defendant contends that his upward departure sentences must be vacated because the judge failed to file written departure reasons within the time allowed by paragraph 921.0016(1)(c), Florida Statutes (1999).
Prior to the sentencing hearing, the State filed a motion for a guidelines sentence departure. The State argued that a departure sentence should be imposed on account of an escalating pattern of criminal conduct, because the current offenses were committed within six months after discharge from a release program, and because the victims suffered extraordinary physical trauma or were treated with particular cruelty. See § 921.0016(3)(p), (e), (l), Fla. Stat. (1997).
At the conclusion of the sentencing hearing, the court announced that it would "grant the upward guideline departure that is requested by the motion filed by the State." The court imposed a life sentence on the kidnapping count and lesser sentences on the remaining counts. The court did not, however, enter a written departure order, or file a transcript of reasons, within seven days. See § 921.0016(1)(c), Fla. Stat. (1997); Fla. R.Crim. P. 3.703(d)(29) (1997).
The defendant filed a timely motion to correct sentence pursuant to Florida Rule of Criminal Procedure 3.800(b) contending that his departure sentence must be vacated, and a guidelines sentence imposed, because the trial court failed to file timely written reasons for departure. The court conducted a hearing on the defendant's motion. At that hearing, the court signed the transcript of the original sentencing hearing, ruling that the transcript would stand as the departure order.
The defendant argues that the departure sentence must be reversed and that he must be sentenced within the guidelines because there was no departure order, or departure transcript, filed within seven days after the sentencing. He argues that the belated signing of the sentencing transcript in October 1999, long after the August 1999 sentencing, came too late.
We reject this argument on authority of Mandri v. State, 813 So.2d 65 (Fla.2002). In that case this court certified the following question: "Where a trial court fails to file written reasons in support of the guidelines departure sentence but, thereafter, in response to a Florida Rule of Criminal Procedure 3.800(b) motion filed by the defendant, does file written reasons justifying the departure, is defendant entitled to a reversal and a remand for a guidelines sentence, under Maddox v. State, 760 So.2d 89 (Fla.2000)?" 813 So.2d at 66. The Florida Supreme Court answered the question in the negative, saying that "the petitioner was not prejudiced in his ability to challenge the trial court's reasons for imposing the departure sentence on direct appeal." Id. (citation omitted). Thus, the *1176 defendant is not entitled to a reversal in this case on account of the late filing of the written departure reasons. The defendant does not challenge the substance of the trial court's departure reasons.
The defendant next argues that he is entitled to have a new sentencing hearing because the judge changed his Florida Bar membership to inactive status after the trial, but before the sentencing hearing. We conclude that the defendant is not entitled to the requested relief.
The trial of this case was conducted by retired Judge Robert M. Deehl, who was appointed to sit as a retired acting circuit judge. The verdict was returned on June 22, 1999.
Judge Deehl switched his Florida Bar membership to inactive status on July 10, 1999. He conducted the sentencing hearing on August 18, 1999.
The defendant argues that once the judge took inactive status with the Florida Bar, it followed that he was no longer qualified to sit as a retired judge. He contends that he is entitled to have a new sentencing hearing before a properly qualified judge.
The defendant points out that in order to be a circuit judge, a person must be, and have been for the preceding five years, a member of the Florida Bar. Fla. Const. Art. V, § 8. Under the Rules Regulating the Florida Bar, an inactive member shall "not hold any position that requires the person to be a licensed Florida attorney...." R. Regulating Fla. Bar 1-3.2(c)(5). The defendant contends that taking inactive Florida Bar status eliminates the ability of the individual to serve as a senior judge.
The State argues that the Florida Bar rules do not answer this question. The State points out that under the Florida Constitution, it is the Chief Justice (and where delegated, Chief Judges) who have the power to assign retired judges. Fla. Const. Art. V, § (2)(b). The Rules of Judicial Administration state that "[a] retired judge shall comply with all requirements that the Supreme Court deems necessary relating to the recall of retired judges." Fla. R. Jud. Admin. 2.030(a)(3)(A). The court has not issued a rule on the point. The State argues that the Florida Supreme Court can, if it chooses, allow service by retired judges with inactive bar membership. See also § 25.073(1)(b), Fla. Stat. (1999) (providing in part that a retired judge is one who "[i]s not engaged in the practice of law.").
The parties have not cited any decision which squarely decides the point, and for present purposes we need not resolve it here. We assume, without deciding, that it is necessary for a retired judge to maintain an active Florida Bar membership in order to be eligible for assignment to judicial service. Assuming that is so, the defendant nonetheless is not entitled to relief.
Florida recognizes the de facto judge doctrine. Stein v. Foster, 557 So.2d 861 (Fla.1990). The retired judge in this case was operating under a valid order of appointment. As explained in Stein:
A de facto judge functions under color of authority even though that judge's actual authority suffers from some procedural defect. Public policy and necessity, to protect the interest of the public and others dealing with a de facto officer, mandate adoption of the de facto doctrine....
... A de facto judge's acts are valid. An objection to a de facto judge's authority to serve must be timely made. At the latest this should be before the final judgment is entered in the action.
Id. at 862 (citations and footnotes omitted).
In this case we reject the defendant's argument because even assuming that *1177 there was a deficiency in the retired judge's Bar membership status, he is nonetheless properly viewed as a de facto judge whose actions are valid. Further, the challenge in this case was not made until after the sentencing proceeding, which is an untimely objection under the rule of Stein.
Affirmed.